By the Court.—Speir, J.
The defense setup on the trial was, that the proof did not conform to the complaint. The defendant’s counsel at the close of the trial moved to dismiss the complaint, on the ground that no cause of action alleged in the complaint had been made out by the proof. It is not claimed that no cause of action had been shown.
The objections to evidence offered during the trial were not placed upon the ground that it was inadmissible under the complaint, but that it was immaterial.
The defendant’s counsel claims that no evidence was given in this case relating to any right of action existing by reason of any alleged promise of the defendant, in regard to the bonds, or out of the defendant’s connection with the railroad company, except such evidence as was admitted solely on the question of notice to the defendant of plaintiff’s alleged ownership. And further, even if proof had been admitted generally, and not limited as he claims it was, yet the court would not, even if the evidence had made out a case, have permitted the plaintiff in the action for a tort, to have recovered on any promise or obligation growing out of the defendant’s dealings with the plaintiff.
This brings us at once to the complaint and the proofs. Passing for the moment the technical question *394 of the form of the action, whether in tort or contract, the defendant would become liable equally to the the plaintiff if the plaintiff was in fact the real owner of the sixteen first mortgage bonds of the Toledo and Warsaw Railway Company, with the coupons attached. If the defendant after proper demand unlaw-t, fully converted them to his own use, the plaintiff would be entitled to their value after proof of the same. If the defendant held them as plaintiff’s agent, and refused to deliver them on application, he would be liable to the plaintiff in the same way and for the same amount. The allegation in the complaint that the defendant wrongfully possessed himself of the ten mortgage bonds of the Peoria and Oquawka Railroad Company, may be stricken out on motion, as redundant, when it appears.
Those bonds became discharged by the foreclosure of the mortgage, and I think it is plain enough the defendant acquired a perfect title to them by his purchase from the company. The company had good right to sell these bonds in open market, or at private sale, for whatever'sum they saw fit. The pledgor, Camp, could only object to such a sale. How while the defendant held these bonds lawfully, I think he treated them as belonging to the plaintiff, and became his agent to receive from him his percentage and assessment; and he received six hundred and sixty-six dollars and sixty-six cents to enable the plaintiff to participate in the new company, and undertook to recover from the new company the bonds, and hold them for the plaintiff. The defendant has not any title to the new bonds ; he holds them for the plaintiff. If it became necessary to pay the insurance company to recover the old bonds from them, and surrender them to the new company, he, in paying that five thousand dollars as plaintiff’s agent in the prosecution of his trust, and the only interest that he can have is to be reimbursed for the money he has paid out. This money has been tendered *395 to him. He simply surrendered ten of the old bonds, and obtained the issue of the new ones. Being coupon bonds, title is acquired by the party purchasing them.
Thus far, the facts have been stated, deduced from the evidence presented under exceptions taken on the trial, for the purpose of showing that the defendant acquired title to these bonds by the purchase he made of them. It is, however, proper to state that all the testimony taken, showing or tending to show, that a right of action exists by reason of any alleged promise of defendant, in regard to the bonds, or out of his connection with the railroad company, was taken under the specific objections of the defendant’s counsel, and his exceptions to the ruling of the court admitting such testimony. The objections were, however, taken persistently at the out-set of the trial to all evidence of this class only so far as it would tend to show notice, and it was stated by the learned judge “that he would limit it to that.” This was, as appears from the case, the clear understanding between the court and the defendant’s counsel. Although it is quite apparent that the objection to this evidence was put upon the ground that it was not admissible in an action for conversion, yet the trial being conducted upon that theory to the end, should the court decide at general term that the pleading should be so amended to conform to the proof, the d f ndant would have judgment against him without being heard upon the merits, which he has a right to consider as secured to him by his objections and exceptions, and upon the limitations within which the testimony was restricted by the court. In this we think there was error. The result of the trial was, that a large amount of testimony was taken, which in view of the court made out a clear case for the plaintiff, and which up to the end of the trial was received, as the defendant had a right to suppose, as having no application to the question of the *396 defendant’s alleged promise in regard to these bonds, or ont of his connection with the railroad company. The real issue between the parties has not been tried.
There should be a new trial, with costs to the defendant to abide the event.
Sedgwick, J., concurred.